234 So.2d 350 (1970)
Clyde H. SIMPSON, As Tax Collector of Duval County, Florida, Fred O. Dickinson, Jr., As Comptroller of the State of Florida, and Robert A. Mallard, As Tax Assessor of Duval County, Florida, Petitioners,
v.
Roxie H. MERRILL, Barbara H. Arnold, Patricia H. Barnes, and Molly H. Sebring, Respondents.
No. 38522.
Supreme Court of Florida.
April 15, 1970.
William Lee Allen and Charles W. Arnold, Jr., Jacksonville, for petitioners.
Edward McCarthy, Jr., of Bryant, Freeman, Richardson & Watson, and W.R. Frazier, Jacksonville, for respondents.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to the District Court of Appeal, First District. Conflict is alleged between the decision of that court reported at 220 So.2d 33 and Palethorpe v. Thomson, *351 171 So.2d 526 (Fla. 1965); Green v. Schuler, 177 So.2d 212 (Fla. 1965).
Respondents, plaintiffs below, brought suit contesting the 1966 and 1967 tax assessments of certain parcels of land owned by them and located within the city limits of Neptune Beach in Duval County. The land, two parcels containing some 14 acres, was assessed at a value of $185,600 for the years in question. Respondents contended that the assessments should not have been in excess of $34,800. The cause was tried without a jury and the court in its final judgment found the assessed value of the property to be $109,250. As to the costs in the case, the trial court held:
"As the taxpayers have received some of the relief they requested, it is the determination of the Court that each of the parties to this litigation should sustain their own costs and therefore costs are not assessed against any party."
On appeal, the District Court held that there was no competent evidence upon which the trial court could base the assessment of parcel 2, $104,250, and that all costs should be taxed against the taxing authorities since the assessment was determined to be grossly in excess of fair market value.
In the Palethorpe and Green cases, this Court held that the State or County, may not be made liable for costs in a case involving the validity of a tax assessment where such liability is not expressly provided for by Statute. Neither case considered the effect of Florida Statute § 57.041(1), F.S.A. which provides:
"The party recovering judgment shall recover all his legal costs and charges which shall be included in the judgment; but this section does not apply to executors or administrators in actions when they are not liable for costs."
We hold that under the foregoing Statute costs may be taxed against the State and its agencies in favor of the party recovering judgment. To the extent that this holding is contrary to prior decisions of this Court in the Palethorpe and Green cases, or any other cases, we expressly recede from those prior decisions. Florida Statutes § 57.041, F.S.A. provides for the recovery of legal costs by the party recovering the judgment in all cases except those specifically exempted. The exemptions in the statutes do not include the State or its agencies and we can find no basis for reading such an exemption into the plain language of the Act.
We are aware of decisions holding the State and its agencies immune from taxation of costs of litigation. We are also aware that governmental agencies today directly effect the lives and property of private citizens more than at any time in the past. This trend has given rise to increased litigation as individuals contest the demands of government. When, through litigation, these demands are determined to be unlawful, the government, like any other party, should be compelled to pay the costs of the litigation.
To require successful litigants against the State and its agencies to pay their own costs offends our basic sense of fairness and may well be a violation of due process of law. As pointed out by District Judge Wigginton, sitting as a member of this Court in Corneal v. State Plant Board, in his dissent:[1]
"When the general government acting through any of its many officers, boards, bureaus, commissions, departments or agencies, takes or threatens action calculated to deprive a person of his property unlawfully and without the payment of just compensation, that person should be permitted to seek protection of the courts without suffering an undue penalty as the price thereof.
"The costs of a successful proceeding instituted by one in the protection of his constitutional rights to restrain the unlawful *352 exercise or abuse of governmental power should not fall on the threatened party, but on those whose action make the institution of the proceeding necessary."
Petitioners also contend that the District Court of Appeal was in error in holding that the Circuit Court did not have competent evidence on which to base its finding as to the fair market value of the property. The District Court remanded for a new trial to determine the fair market value of parcel 2 of the property. Respondents are also unhappy with that portion of the District Court's decision which remands for a new trial to determine the fair market value of parcel 2. Respondents contend that the value of the property should be the 1965 assessment of $34,800 which was made by the assessor following the court ordered reassessment for Duval County. It is contended that since there was no evidence showing any change of circumstances from January 1, 1965, and in view of the statement by petitioners' expert that the development trend in the area was "static," the 1965 figure is the only competent evidence of value. In ruling on this point the District Court stated in pertinent part as follows:[2]
"There was no testimony given upon which a value could be arrived at between the highest figure of $47,000 by one of the plaintiffs' witnesses, and the only figure given by the appellees' witness of $146,500.
"* * *
"There was no showing made by appellees that economic conditions or any development factors had occurred since the supposedly 100% assessment [$34,800] of 1965 had been made, yet the Assessor's Office had again assessed for 1966 at $185,000, which figure was declared by the Equalization Board to be $45,000 excessive and testified to by the appellees' expert witness in this case as being approximately $40,000 excessive, in fixing a fair market value of $146,500.
"Section 196.01, Florida Statutes, F.S.A., authorizes the circuit court to inquire into and determine the legality, equality and validity of assessments and to render decrees setting aside such assessment or any part of the same that shall appear to be contrary to law. But this provision of the law does not permit the trial judge to use his independent judgment, without competent evidence being introduced before him, in fixing assessments. He can not take the place of the assessor, although he may reduce the tax assessor's assessment if competent evidence is introduced showing the same to be in error."
We agree with the holding of the District Court in this regard. While it is clear that the assessments for the years 1966 and 1967 are excessive, respondents have not carried the burden of presenting evidence to establish the degree of excessiveness.
Accordingly, the decision of the District Court holding costs can be assessed against the county tax assessor and remanding for a new trial to determine fair market value of parcel two, the principal part of the property, is affirmed.
It is so ordered.
ROBERTS, DREW and CARLTON, JJ., concur.
ERVIN, C.J., concurs specially with opinion.
ERVIN, Chief Justice (specially concurring):
I agree that at this point in the evolution of judicial principles it is appropriate from the standpoint of equity and equality that state or county government, its officers, *353 agencies, instrumentalities, and political subdivisions, when sued officially or when suing officially, should respond similarly as any private litigant in the payment of resulting costs of litigation when the state or county or its officer or agency is the losing party. However, it should be understood that our holding herein in its actual application to particular cases is always subject to the limitation that costs can be recovered only if public funds have been duly provided by law, in advance, for such purpose and are actually available to the losing governmental entity, officer, agency, instrumentality or political subdivision to pay such costs. Public funds are often made available, either expressly or by necessary implication, in order that the losing public officer or agency may respond to an assessment of costs in public litigation. However, this is not always the case.
It could be highly disruptive to orderly governmental administration if a public officer or agency were required in all circumstances to pay such costs as a nonrecurring item out of his or its budgetary appropriation to the detriment of other normal expenses of the office or the agency, if no provision for funds had been made to pay such costs.
Many officers and governmental agencies operate on very limited itemized budgets. Not infrequently in the normal exercise of their functions they have honest disputes with members of the public and litigation will ensue. Public officers and governmental agencies should not be made timorous in the forthright administration of their duties by the fear that they may be losing parties in such litigation and that the ensuing court costs could seriously jeopardize normal discharge of the duties of such officers and agencies by reducing their operating budgets beyond the point where they could pay their normal salaries and expenses. Litigation costs, including costs of appeals, can in some cases be quite extensive.
In view of the restrictions involved in governmental budgets which vary from office to office and from agency to agency, as to provisions of public funds for particular items of expense, I would condition our recession from the Palethorpe and Green cases on the availability of budgeted funds to pay the court costs of the particular losing officer or agency in litigation. If there is dispute as to availability of funds of the officer or agency to pay such costs, a separate mandamus action to determine the issue could be brought. If there were no funds available, the losing officer or agency in the litigation could seek a budgetary item in his or its succeeding year's budget to pay the judgment costs or a claim or relief bill could be sought.
It is my view that F.S. Section 57.041(1), F.S.A. cannot be read in isolation as an imperative dictating recovery from a public officer or agency in all circumstances, but must be considered in relation to provisions of the State Constitution and other laws relating to appropriations, budgetary restrictions, and availability of funds for specific items of expense. Particularly, I do not believe said Section 57.041(1) applies in all situations where recovery of costs of litigation from a public officer or agency is not contemplated or reasonably implied in the appropriation for the operation of the public office or agency, and payment thereof would actually result in crippling the normal operation of the office or agency.
I think it is appropriate under our decision herein that costs be assessed against the losing public officer or governmental agency and entered in the judgment but that recovery thereunder or enforcement thereof is conditioned on the availability of funds of the officer or agency to pay the same. Compare Miami Retreat Foundation v. Ervin (Fla.), 66 So.2d 667.
NOTES
[1] 101 So.2d 371, 372 (Fla. 1958).
[2] 220 So.2d 33, 34 (Fla.App.1st 1969).