601 So.2d 1280 (1992)
Dawn ZIEGLER, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
Natalie QUINTERO, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
Nos. 91-1795, 91-2228.
District Court of Appeal of Florida, First District.
July 2, 1992.
*1281 Suzanne Harris of Florida Rural Legal Services, Inc., Lakeland, and Philip R. Maiorca of Florida Rural Legal Services, Inc., Fort Myers, for appellants.
Anthony N. DeLuccia, Jr. of Dept. of Health and Rehabilitative Services, Fort Myers, for appellee.
ALLEN, Judge.
Dawn Ziegler and Natalie Quintero appeal from final orders of a Department of Health and Rehabilitative Services hearing officer upholding determinations by the department with respect to the appellants' eligibility for public assistance benefits. Because we conclude that the department incorrectly determined certain trust funds were resources "available" to the appellants' families, we reverse.
In May of 1990, Ziegler began receiving Aid to Families with Dependent Children (AFDC) and food stamps for herself and her minor son, Michael. Three months later, the department learned that Michael was the beneficiary of a trust account funded by settlement proceeds from a personal injury suit brought in Michael's behalf in the Superior Court of New Jersey. A judge of that court had approved the settlement and appointed Dawn Ziegler the guardian of her son's property. The judge's order provides in pertinent part:
IT IS, on this 14th day of June, 1988, ORDERED AND ADJUDGED that judgment is hereby entered in favor of the minor plaintiff [Michael Ziegler] in the sum of $11,002.95, which sum is to be deposited with the Surrogate of Atlantic County until the minor plaintiff attains the age of eighteen (18) years or until further Order of this Court[.]
Upon request, Ziegler gave the department a copy of the order and the name and address of the New Jersey attorney who had represented Michael in the personal injury case. That attorney advised the department that, in his opinion, a Superior Court judge would not permit any disbursement from Michael's account simply because his mother was experiencing financial difficulties and was unable to fulfill her support obligations.
Thereafter, the department terminated Ziegler's AFDC and food stamp benefits *1282 because the family's assets, including the trust account, exceeded the applicable entitlement standards. The department reasoned that because the order creating the trust indicated that the funds might be withdrawn upon court order, the funds were available to Ziegler pending a ruling by the court on a petition for their withdrawal. The department directed Ziegler to request withdrawal of the funds and reapply for benefits when and if the Superior Court denied her petition. At a hearing at which Ziegler unsuccessfully challenged the department's termination decision, she explained that she had not identified the trust account as an asset when she initially applied for assistance because she never considered the money hers to spend. As of the hearing date, Ziegler had asked her New Jersey attorney to petition the Superior Court for release of the funds, but she did not know whether such a petition had been filed.
In December of 1990, Natalie Quintero applied for AFDC for herself and her daughter, Desiree Quintero. At her interview, she informed the department that Desiree was the beneficiary of a trust account funded by settlement proceeds from a premises liability suit brought in the child's behalf in the Superior Court of New Jersey. In June of 1990, a Superior Court judge had approved the settlement of Desiree's case and entered an order providing in pertinent part:
IT IS FURTHER ORDERED ... that the net recovery of $12,420.37 shall be paid by or on behalf of the defendant by check payable to Natalie Quintero, Guardian Ad Litem of Desiree Quintero and to the Surrogate of Hudson County for the benefit of Desiree Quintero. The Guardian Ad Litem shall endorse that check and deliver it to the Surrogate who shall deposit same in the Surrogate of Hudson County Intermingled Account in the name of Desiree Quintero. Thereafter, monies are to be paid from said account only upon further order of the Superior Court of New Jersey, Law Division, Probate Part, pursuant to N.J.S.A. 3B:15-17 or upon the minor attaining majority under N.J.S.A. 3B15-17.1[.]
The department determined that the trust funds, which exceeded the entitlement standard, were legally available to Quintero, so the agency directed her to petition the Superior Court for their withdrawal. Estimating that Quintero's petition would be acted upon by the Superior Court within two to three months, the department approved her application for AFDC through April of 1991 only. Like Ziegler, Quintero unsuccessfully sought review of the department's action on her application. At her appeal hearing, she informed the hearing officer that when the trust account was created, the judge and her attorney had told her that the money could only be used for Desiree's future medical expenses or emergencies. As of the hearing date, Quintero had written and called the Superior Court judge who established the trust account, requesting his assistance in the matter.
While these appeals were pending, the appellants' requests for withdrawal of the trust funds were denied by judges of the Superior Court. Ziegler's request was denied in June of 1991, and Quintero's request was denied during the following month. The appellants' benefits were thereafter reinstated by the department, but their lost benefits for the periods of disqualification were not restored.
Under the AFDC program, participating states that provide financial assistance to families with needy, dependent children under an approved state plan receive partial reimbursement from the federal government. 42 U.S.C.A. § 601 (West 1991). Florida, which participates in the program under an approved plan, must operate its program in accordance with Title IV of the Social Security Act of 1935, as amended, 42 U.S.C.A. §§ 601-687, and applicable regulations promulgated by the United States Department of Health and Human Services. Heckler v. Turner, 470 U.S. 184, 189, 105 S.Ct. 1138, 1141, 84 L.Ed.2d 138 (1985); Ealey v. Holt, 523 So.2d 173, 174 (Fla. 1st DCA 1988). The Social Security Act requires participating states to consider a family's "income and resources" when determining the family's *1283 eligibility for benefits. 42 U.S.C.A. § 602(a)(7)(A) & (B). Financial eligibility is determined on a family unit basis, not an individual basis. 42 U.S.C.A. § 602(a)(38); Ealey, 523 So.2d at 174. To be eligible for AFDC benefits, the applicant family (known as the assistance unit) may not own real or personal property "in excess of one thousand dollars equity value," excluding the home and various other items. See 45 C.F.R. § 233.20(a)(3)(i)(B) (1991) and Fla. Admin. Code Rules 10C-1.099(1) and 10C-1.099(4) (1990). Although Ziegler was receiving food stamps as well as AFDC benefits, we focus only upon AFDC eligibility, because recipients of AFDC benefits are "categorically eligible" for food stamps. 7 C.F.R. § 273.2(j)(2)(i).
Federal regulations describe when "income and resources" are to be considered available to an assistance unit for purposes of determining eligibility. They provide in relevant part:
To the extent not inconsistent with any other provision of this chapter, income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.
45 C.F.R. § 233.20(a)(3)(ii)(D). In Turner, the Supreme Court discussed the origin and purpose of the "principle of actual availability" referenced in the regulation. The court observed that the principle derives from a 1940 policy statement authored by the Social Security Board which cautioned the states that when considering a recipient's income and resources, "they must ensure that any such income or resources `actually exist,' be not `fictitious' or `imputed,' and `be actually on hand or ready for use when it is needed.'" Turner, 470 U.S. at 200, 105 S.Ct. at 1147. The purpose of the actual availability principle is "to prevent the States from relying on imputed or unrealizable sources of income artificially to depreciate a recipient's need." Turner, 470 U.S. at 201, 105 S.Ct. at 1147. See also, Schrader v. Idaho Dept. of Health & Welfare, 768 F.2d 1107, 1112 n. 5 (9th Cir.1985) (the focus is upon the applicant's actual, practical ability to make a resource available).
The department has expounded upon the federal regulation describing the availability of assets with the following rule: "Assets not accessible to the child, parent or relative due to legal restrictions or factors beyond their control are considered unavailable provided the legal restrictions were not induced or created by the parent or relative. Department legal staff determine availability of assets with legal restrictions." Fla. Admin. Code Rule 10C-1.099(5). This provision exists "to preclude the taxpayers from an obligation to support a family when it may draw instead upon its own property for support." Perkins v. State, Dept. of Health & Rehab. Servs., 538 So.2d 1316, 1318 (Fla. 3d DCA 1989).
The appellants argue that the department has construed its rule in a manner inconsistent with the Social Security Act and the regulations promulgated thereunder. In essence, the department presumed that appellants' trust funds were available pending the New Jersey courts' refusal to permit withdrawal of the funds for support of the minor beneficiaries. The department relied upon language in the orders creating the trusts which indicates that withdrawals might be authorized upon "further order of the Superior Court." Therefore, until the New Jersey courts refused to permit requested withdrawals, the department did not view the funds as inaccessible due to legal restrictions beyond the appellants' control. In the words of the federal regulation, the department took the view that, absent court refusal to allow disbursements, each appellant had "a legal interest in a liquidated sum and ... the legal ability to make the sum available for support and maintenance."
We hold that the department's application of its rule in these cases is inconsistent with federal law. The facts presented here compel a finding that the trust funds were not "available" resources. To paraphrase Turner, the funds were not on hand or ready for use when needed. Although New Jersey law may authorize invasion of the corpus and income of a minor's trust for the necessary support and *1284 maintenance of the minor and needy members of his household, disbursement of the funds involved here can only be made upon order of a New Jersey court. Funds on deposit in a demand account, such as an ordinary bank checking or savings account, are readily and immediately available for use whenever needed, but funds which may be disbursed only upon court order are not. Indeed, the department's own estimate was that two to three months would be required to secure a ruling from the New Jersey court on whether settlement proceeds could be disbursed for the support of Desiree Quintero and her family. Funds which might be available only after a lengthy wait for authorization by a judge, who then may or may not grant authorization, simply are not "available" resources under 45 C.F.R. § 233.20(a)(3)(ii)(D).
Additionally, the department's position in these cases appears to be inconsistent with its own rule. These cases do not involve situations where funds are unavailable due to some legal restriction created by the applicant or a member of the applicant's family. The legal restrictions here were created by court order and were in accordance with the statutory law of New Jersey.
Therefore, the appealed orders are reversed, and these cases are remanded for entry of orders consistent with this opinion.
BARFIELD and KAHN, JJ., concur.